IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PERFECTVISION MANUFACTURING, INC.                                    PLAINTIFF

v.                                   No. 4:12CV00623 JLH

PPC BROADBAND, INC., d/b/a PPC                                       DEFENDANT

**OPINION AND ORDER**

PerfectVision Manufacturing, Inc., brings this declaratory judgment action seeking a judicial

determination that a product that it manufactures does not infringe upon patents owned by PPC

Broadband, Inc., d/b/a PPC.  PPC has offered PerfectVision a covenant not to sue, which PPC

contends means that there is no case or controversy between the parties and thus that the Court lacks

subject matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.  On that

basis, PPC has moved to dismiss the complaint.  Also pending are motions by PerfectVision to

amend its complaint, a motion in the alternative by PPC to transfer the action to the Northern District

of New York, and a motion by PerfectVision to enjoin PPC from proceeding with a separately filed

action in the Northern District of New York.  For reasons explained below, PPC's motions to

dismiss and to transfer are denied, PerfectVision's motion to amend is granted, and PerfectVision's

motion to enjoin is denied.

I.

PerfectVision designs, manufactures, and sells coaxial cables and connectors, as well as other

products.  According to PerfectVision's complaint, on September 27, 2012, Robert Chastain,

PerfectVision's CEO, and John Mezzalingua, PPC's CEO, had a telephone conversation in which

PPC inquired about the possibility of PerfectVision distributing a PPC continuity connector.[1]

---

[1] Connectors for coaxial cables generally are connected onto complementary interface ports
to integrate electrically coaxial cables with various electronic devices and cable communications

Chastain told Mezzalingua that PerfectVision had its own continuity connector, marketed and sold as the PV6SL SignaLoc connector. PPC asserted that the SignaLoc connector infringed PPC's continuity patents, and PPC assured PerfectVision that PPC would pursue legal remedies against PerfectVision. The complaint alleges that PPC said that PerfectVision "would lose" regardless of whether the connector infringed PPC's patents, and PPC said that it intended to incorporate PerfectVision's continuity solution into one of PPC's pending patent applications and claim it as a PPC invention.

On October 4, 2012, PerfectVision brought this declaratory judgment action seeking a judicial determination that PerfectVision's SignaLoc connector does not infringe any of PPC's continuity patents. In the original complaint, PerfectVision sought a declaratory judgment regarding six of PPC's patents: United States Patent Numbers 8,192,237; 7,845,976; 7,950,958; 8,075,338; 8,157,589; and 8,167,646. On October 9, 2012, Douglas Nash, counsel for PPC, emailed PerfectVision's counsel and asked for proof that the SignaLoc connector existed and was being marketed and sold when the complaint was filed. In response, Chastain sent Mezzalingua a letter with a two-page flyer that included illustrations of PerfectVision's SignaLoc connector, as well as a sample of the SignaLoc connector.

On October 26, 2012, Nash sent a letter on behalf of PPC to PerfectVision that included the following covenant not to sue:

> Assuming that the illustrations in the flyer accurately depict every version of the actual SignaLoc connectors and that the sample provided is representative of every version of the SignaLoc connectors, we can resolve this case now without wasting unnecessary resources and without requiring intervention from the Court.

---

equipment. A continuity connector is designed to maintain a continuous ground connection between the cable and the port to which the connector is attached, even if the connector is not fully tightened onto the port. *See* Document #1-2 at 59.

2

Specifically, PPC can provide Perfect Vision a "Super Sack" representation. That is, PPC will release and covenant not to sue PerfectVision for infringement of U.S. Patent Nos. 8,192,237, 7,845,976, 7,950,958, 8,167,646, 8,075,338, and 8,157,589 ("patents-in-suit") based on PerfectVision's manufacture, importation, use, sale and/or offer of the SignaLoc connectors as depicted in the illustrations and represented in the product sample. This would not be a license to practice the patents-in-suit, and PPC would explicitly reserve the right to later assert the patents-in-suit against PerfectVision should the design of the SignaLoc connectors change in a material way, or should PerfectVision in the future offer some other product that PPC believes infringes one or more of the patents-in-suit.

Based on the limited information Mr. Chastain provided, we understand that (i) no portion of the "Constant Contact C-Clamp" is electrically conductive, (ii) other than the nut, the post, and the compression ring, the connectors do not contain any other component that is electrically conductive, and (iii) other than the circular opening at the end of the post, there are no post openings or engagement fingers on the end of the post that makes contact with the port when the connector is fully tightened onto the port. In the absence of feedback from you to the contrary, we will assume that our understanding is correct.

Document #13-2 at 6-7. On November 2, 2012, PerfectVision's lawyer responded with a letter

stating:

First, to avoid contentious legal letter writing, I will not comment in detail on your interpretation of the *Super Sack* decision, its current viability in view of subsequent Federal Circuit decisions and, particularly, the Supreme Court's decision in *MedImmune*, and your application of it here. For certainty and clarity, please simply know we disagree with your letter on our fronts.

Nevertheless, we do appreciate your and your client's willingness to try to resolve the parties' dispute in an efficient manner. As you know, the parties were able to amicably resolve a comparable dispute as evidenced by a Confidential Settlement Agreement effective as of September 12, 2011. We believe Article III of that Agreement, particularly Paragraphs 1-3, set out an appropriate and acceptable means for the parties to resolve this dispute.

Please let us know if PPC is willing to entertain an agreement that contains comparable terms to resolve this matter. If so, I will provide you a more specific proposal for your client's consideration.

Document #13-2 at 8.

3

On November 9, 2012, PPC filed a motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that its covenant not to sue divested this Court of subject matter jurisdiction over the declaratory judgment action. PerfectVision opposed the motion and asked this Court to stay proceedings in this action until the U.S. Supreme Court handed down its ruling in *Already, LLC v. Nike, Inc.* On December 6, 2012, PerfectVision filed a motion for leave to file an amended complaint, "due to the discovery of four additional patents which have issued to PPC and a fifth which has been allowed and for which required fees have been paid to allow it to issue within a short time. These additional patents held by PPC are directly on point with the subject matter of this case." Document #20 at 1. The four additional patents issued to PPC were United States Patent Numbers 8,313,353; 8,313,345; 8,323,053; and 8,323,060. All four patents were either issued on November 20, 2012, or December 4, 2012. The fifth patent that had not yet been issued is the so-called "Ehret Patent" and was at that time United States Patent Application Number 13/075,406. PPC opposed PerfectVision's motion for leave to file an amended complaint.

On December 17, 2012, this Court stayed this action "pending a decision by the United States Supreme Court in *Already, LLC v. Nike, Inc.*" and stated that the parties could file supplemental briefs simultaneously within twenty-one days after the Supreme Court issued its opinion in *Already*. The Supreme Court issued its opinion in *Already* on January 9, 2013. *See Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013). On January 30, both parties submitted supplemental briefs. On February 4, at 11:01 p.m. Central Standard Time (February 5 at 12:01 a.m. Eastern Standard Time), PerfectVision filed a second motion for leave to file an amended complaint. PerfectVision filed this motion because the Ehret Patent issued on February 5, 2013, becoming United States Patent Number 8,366,481. Also on February 5, PPC filed a complaint against

4

PerfectVision in the U.S. District Court for the Northern District of New York, alleging that PerfectVision's SignaLoc connector infringes the Ehret Patent. In that complaint, PPC also asserts claims against PerfectVision for negligent misrepresentation, unfair competition, and statutory violations for unfair and deceptive business practices. *See* Document #30-13; *PPC Broadband, Inc. v. PerfectVision Mfg., Inc.*, No. 5:13-CV-0134 (Document #1). And yet again on February 5, PPC filed a complaint against PCT International, Inc., claiming that PCT's coaxial cable connectors infringed the Ehret Patent. *See* Document #30-14; *PPC Broadband, Inc. v. PCT Int'l, Inc.*, No. 5:13-CV-0135 (Document #1).

PPC opposed PerfectVision's second motion for leave to file an amended complaint and, as an alternative to its motion to dismiss this action, moved to transfer this action to the Northern District of New York. PerfectVision opposed PPC's motion to transfer this action and also moved to enjoin the action in the Northern District of New York.

## II.

### A.     Motion to Dismiss for Lack of Subject Matter Jurisdiction

"A 'case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (Fed. Cir. 2011) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). Article III of the U.S. Constitution grants the federal courts authority to adjudicate certain "Cases" and "Controversies." The Declaratory Judgment Act provides, "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act's phrase "case of actual

controversy" "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 771, 166 L. Ed. 2d 604 (2007). To show that a case of actual controversy exists, a plaintiff must demonstrate standing: "a 'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Already, LLC*, 133 S. Ct. at 726 (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 3324, 82 L. Ed. 2d 556 (1984)).

PPC first argues that no case or controversy existed at the time PerfectVision initiated this action. In patent declaratory judgment actions,

> Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do. . . . [W]here a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007); *see Already, LLC*, 133 S. Ct. at 727 (citing *MedImmune*, 549 U.S. at 126-37, 127 S. Ct. 764, for the proposition that "a genuine threat of enforcement of intellectual property rights that inhibits commercial activity may support standing"). Here, PerfectVision's complaint alleges that PPC contended that PerfectVision's SignaLoc connector infringed PPC's continuity patents, and PPC told PerfectVision that PPC would "pursue legal remedies against PerfectVision." Document #1 at 2. These allegations constitute a genuine threat of enforcement of intellectual property rights: PPC asserted rights under its patents based on PerfectVision's activity and PerfectVision contends that it has the right to engage in its selling of the SignaLoc connector without a license. Therefore, PerfectVision had standing at the

6

outset of this litigation to pursue its claims for declaratory judgment, and a case or controversy existed at the time the complaint was filed with this Court.

PPC next argues that even if a case of actual controversy existed at the time PerfectVision filed suit, PPC's covenant not to sue eliminated the case of actual controversy and divested this Court of jurisdiction. "[A]n 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation." *Already, LLC*, 133 S. Ct. 726 (quoting *Alvarez v. Smith*, 558 U.S. 87, 92, 130 S. Ct. 576, 580 175 L. Ed. 2d 447 (2009)). *Already, LLC*, presented the issue of "whether a covenant not to enforce a trademark against a competitor's products and any future 'colorable imitations' moots the competitor's action to have the trademark declared invalid." *Id.* at 725. In *Already*, the Court explained that a defendant cannot moot a case simply by ending its unlawful conduct after it has been sued, because otherwise "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* at 727. Therefore, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190, 120 S. Ct. 693, 709, 145 L. Ed. 2d 610 (2000)). More specifically with reference to this context, the defendant bears the burden of showing that it is absolutely clear that the defendant could not reasonably be expected to resume its enforcement efforts against the plaintiff. *Id.*; *AstraZeneca LP v. Breath Ltd.*, No. 08-1512 (RMB/AMA), 2013 WL 2404167, at *3 (D.N.J. May 31, 2013) (applying *Already*'s standard and holding that a covenant not to sue for patent infringement did not divest the court of jurisdiction).

7

PPC has not met its burden of showing that it is absolutely clear that it would not resume its

efforts in contending that the SignaLoc connector infringes PPC's patents. PPC's covenant not to

sue is not unconditional and irrevocable, in contrast to the covenants not to sue in cases PPC cites

that have divested courts of jurisdiction. In *Already*, Nike claimed that certain lines of Already's

shoes infringed and diluted Nike's Air Force 1 trademark, and Already counterclaimed for a

declaratory judgment that the Air Force 1 trademark was invalid. *Id.* at 725. Nike then issued a

covenant not to sue and moved to dismiss for lack of subject matter jurisdiction. The covenant not

to sue stated,

> [Nike] unconditionally and irrevocably covenants to refrain from making *any*
> claim(s) or demand(s) . . . against Already or *any* of its . . . related business entities
> . . . [including] distributors . . . and employees of such entities and *all* customers . . .
> on account of any *possible* cause of action based on or involving trademark
> infringement, unfair competition, or dilution, under state or federal law . . . relating
> to the NIKE Mark based on the appearance of *any* of Already's current and/or
> previous footwear product designs, and *any* colorable imitations thereof, regardless
> of whether that footwear is . . . produced or otherwise used in commerce before or
> after the Effective Date of this Covenant.

*Id.* at 728. The Court held that Nike had met its burden of showing that it was absolutely clear that

it would not resume enforcement efforts because the covenant was unconditional and irrevocable:

"Beyond simply prohibiting Nike from filing suit, it prohibits Nike from making any claim *or* any

demand. It reaches beyond Already to protect Already's distributors and customers. And it covers

not just current or previous designs, but any colorable limitations." *Id.*

The other decisions upon which PPC relies involved covenants not to sue that were similar

to the one in *Already*. In *Dow Jones & Co., Inc. v. Ablaise Ltd.*, for instance, Ablaise offered a

covenant not to sue Dow Jones that stated,

> Ablaise, on behalf of itself and any successors-in-interest to the '530 patent, will
> release and unconditionally covenant not to sue Dow Jones & Company, Inc., or any

8

of its subsidiaries or divisions . . . for infringement of the '530 patent as of the date
of this agreement based on Dow Jones' manufacture, importation, use, sale and/or
offer for sale of currently existing products or use of methods.

606 F.3d 1338, 1345 (Fed. Cir. 2010); *see also Internet Pipeline, Inc. v. Aplifi, Inc.*, No. 10-6089,

2011 WL 4528340 (E.D. Pa. Sept. 29, 2011); *Furminator, Inc. v. Kim Laube & Co., Inc.*, No.

4:06CV1314RWS, 2008 WL 80691, at *1 (E.D. Mo. Jan. 7, 2008) ("The covenant states, in relevant

part, that it covers 'any and all products being offered for sale on . . . KLCI's websites, on July 20,

2007.'"); *Crossbow Tech., Inc. v. YH Tech.*, 531 F. Supp. 2d 1117, 1122 (N.D. Cal. 2007).

By contrast, PPC's covenant not to sue PerfectVision states,

> *Assuming* that the illustrations in the flyer accurately depict every version of
> the actual SignaLoc connectors and that the sample provided is representative of
> every version of the SignaLoc connectors, we can resolve this case now without
> wasting unnecessary resources and without requiring intervention from the Court.

> Specifically, PPC can provide Perfect Vision a "Super Sack" representation.
> That is, PPC will release and covenant not to sue PerfectVision for infringement of
> U.S. Patent Nos. 8,192,237, 7,845,976, 7,950,958, 8,167,646, 8,075,338, and
> 8,157,589 ("patents-in-suit") based on PerfectVision's manufacture, importation, use,
> sale and/or offer of the SignaLoc connectors as depicted in the illustrations and
> represented in the product sample. This would not be a license to practice the
> patents-in-suit, and PPC would explicitly reserve the right to later assert the patents-
> in-suit against PerfectVision should the design of the SignaLoc connectors change
> in a material way, or should PerfectVision in the future offer some other product that
> PPC believes infringes one or more of the patents-in-suit.

> *Based on the limited information Mr. Chastain provided, we understand that*
> (i) no portion of the "Constant Contact C-Clamp" is electrically conductive, (ii) other
> than the nut, the post, and the compression ring, the connectors do not contain any
> other component that is electrically conductive, and (iii) other than the circular
> opening at the end of the post, there are no post openings or engagement fingers on
> the end of the post that makes contact with the port when the connector is fully
> tightened onto the port. *In the absence of feedback from you to the contrary, we will
> assume that our understanding is correct.*

Document #13-2 at 6-7 (emphases added).  PPC acknowledges that it only had limited information

from Chastain regarding the design of the SignaLoc connector and conditioned its covenant not to

sue on the accuracy of its own interpretations of that limited information.  No evidence exists that Chastain specifically provided information on the three numbered points PPC lists and relies upon in the final paragraph of the above-quoted covenant not to sue.  *See Harris Corp. v. Fed. Express Corp.*, 670 F. Supp. 2d 1306, 1308, 1313-14 (M.D. Fla. 2009) (finding that a covenant not to sue Federal Express for patent infringement did not divest the court of jurisdiction when the covenant was based on Federal Express's witnesses' incomplete descriptions of their products); *AstraZeneca*, 2013 WL 2404167, at *3-5 (holding that a covenant not to sue did not divest the court of jurisdiction because it was not unconditional and irrevocable).

PPC cites *Internet Pipeline, Inc. v. Aplifi, Inc.*, in which the district court held that iPipeline's covenant not to sue Aplifi that was based on Aplifi's counsel's or Aplifi's specific representations of its product to iPipeline divested the court of jurisdiction. 2011 WL 4528340, at *2.  In that action, however, Aplifi's counsel had made specific representations regarding the product to iPipeline. *Id.* at *1 ("[Aplifi's] counsel has represented to iPipeline's counsel that the only pre-applications, drop tickets, or other carrier forms used in connection with [Aplifi's] accused Affirm for Life system are 'carrier-specific.'").  In this action, PPC predicates its covenant not to sue on specific assumptions based upon viewing a sample SignaLoc connector, not on representations made by PerfectVision to PPC.  The carefully worded covenant not to sue leaves open the possibility that PPC could sue PerfectVision for infringement of the patents-in-suit in the original complaint.

In addition to the conditional nature of the covenant not to sue, other circumstances indicate that PPC has not met its formidable burden of showing that it is absolutely clear that PPC will not resume its enforcement activities against PerfectVision for PerfectVision's SignaLoc connector.  In fact, PPC did resume its patent-infringement enforcement of PPC's SignaLoc connector by filing suit

10

in the Northern District of New York and claiming that the SignaLoc connector violated the Ehret Patent. PPC argues that the action in the Northern District of New York cannot be considered a resumption of its enforcement efforts because it addresses a patent other than the patents at issue in the original complaint in this action. *See Internet Pipeline, Inc.*, 2011 WL 4528340; *Furminator*, 2008 WL 80691.

PPC is correct that the patent at issue in the action in the Northern District of New York is not one of the patents at issue in the original complaint in this action (since the Ehret Patent had not yet issued at the time the original complaint was filed in this action). Yet the fact that PPC brought an action against PerfectVision alleging that the product at issue in this action infringed one of its patents, and did so on the first day that the Ehret Patent issued, is an additional reason to believe that PPC reasonably could be expected to exploit the limitations in the covenant that render it conditional so as to bring an action against PerfectVision at a later date for infringement of the patents at issue in this action. "[R]elated litigation involving the same technology and the same parties is relevant in determining whether a justiciable declaratory judgment controversy exists on other related patents." *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1344 (Fed. Cir. 2007).[2] PPC's suit in the Northern District of New York, for instance, directly contradicts the argument of a section in PPC's reply brief in support of its motion to dismiss this action titled, "PPC's Covenant Does Not Leave Open the Possibility of a Later Suit Concerning the Current Design of the SignaLoc Connector." Document #23 at 6.

In *Already*, in determining that Nike had met its burden of showing that it was absolutely clear that its infringement-enforcement activity could not reasonably be expected to recur, the Court

---

[2] PPC has sued PerfectVision for patent infringement before, but the record does not indicate whether the litigation involved the same technology. *See supra* at 3.

placed particular focus on the products at issue, namely Already's shoes, and found that there was

no prospect that Already would produce a shoe that would be not be covered by Nike's covenant not

to sue: "If such a shoe exists, the parties have not pointed to it, there is no evidence that Already has

dreamt of it, and we cannot conceive of it. It sits, as far as we can tell, on a shelf between Dorothy's

ruby slippers and Perseus's winged sandals." *Already, LLC*, 133 S. Ct. at 728. The Court then

explained the point of its inquiry and ultimate determination: "Here of course the whole point is that

Already is free to sell its shoes without any fear of a trademark claim." *Id.* at 729. In contrast, here

PerfectVision is not and, since Chastain's telephone conversation with Mezzalingua, has not been

free to sell its SignaLoc connector without fear of a patent-infringement claim.

In *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, the Federal Circuit held that a covenant

not to sue did not divest the court of jurisdiction and distinguished district court cases where

covenants not to sue had divested those courts of jurisdiction:

> In all of these cases, the covenants covered *the current products* whether they were
> produced and sold before or after the covenant, and the courts found absence of
> continuing case or controversy. In contrast, Revolution offered no covenant *on the
> current products*, stating that it is not obligated to "repudiate suit for future
> infringement." Br. at 24. We agree that such is its right. However, by retaining that
> right, Revolution preserved this controversy at a level of "sufficient immediacy and
> reality" to allow Aspex to pursue its declaratory judgment counterclaims.

556 F.3d 1294, 1300 (Fed. Cir. 2009) (emphasis added); *see id.* at 1298 (distinguishing the covenants

not to sue in *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340 (Fed. Cir. 2007), and *Super

Sack Manufacturing Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995), *overruled on

other grounds by MedImmune*, 549 U.S. at 127, 127 S. Ct. at 771, because in those covenants "the

continuing activities were not subject to an infringement suit"). Also, in *SanDisk Corp. v.

STMicroelectronics*, the Federal Circuit held that a statement from STMicroelectronics that it would

not sue SanDisk for patent infringement did not eliminate the justiciable controversy "because [STMicroelectronics] has engaged in a course of conduct that shows a preparedness and willingness to enforce its patent rights despite [STMicroelectronics'] statement." 480 F.3d 1372, 1383 (Fed. Cir. 2007). Similarly, PPC's course of conduct in filing an infringement action against PerfectVision shows a preparedness and willingness to enforce its patent rights against PerfectVision for PerfectVision's marketing and selling of the SignaLoc connector.

PPC's covenant not to sue is not unconditional and irrevocable. PPC's actions in related patent-infringement litigation lend support to the belief that PPC would exploit the conditional nature of the covenant not to sue if it ever so desired. PPC has not met the formidable burden of showing that it is absolutely clear that it could not reasonably be expected to resume its efforts in contending that the SignaLoc connector violates PPC's patents, so PPC's covenant not to sue did not divest this Court of jurisdiction over the patents in this declaratory judgment action.

**B.     Motions for Leave to Amend Complaint; First-Filed Action**

PerfectVision has two pending motions for leave to amend its complaint, both of which PPC opposes. As a preliminary matter, PPC opposes PerfectVision's motions for leave to amend its complaint because PPC argues that its covenant not to sue divested this Court of jurisdiction before PerfectVision moved to amend its complaint. Because, as discussed, PPC's covenant not to sue did not divest this Court of jurisdiction, that argument fails.

PPC next argues that this Court should deny PerfectVision's motions to amend its complaint because the action in the Northern District of New York is the first-filed action with respect to the Ehret Patent. In response, PerfectVision argues that if this Court grants its second motion for leave to amend its complaint, which includes a claim for declaratory judgment of the Ehret Patent, then

13

the complaint's date relates back to the date of the original complaint, making this the first-filed

action with respect to the Ehret Patent. Under Rule 15 of the Federal Rules of Civil Procedure, "An

amendment to a pleading relates back to the date of the original pleading when . . . the amendment

asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or

attempted to be set out – in the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B).  While the

Federal Circuit has not explained the circumstances in which this rule applies to patent-infringement

claims where the amended complaint adds claims involving new patents, the district courts to

consider the issue "have held that a claim for the alleged infringement of one patent is the same

'conduct or occurrence' as a claim for the alleged infringement of another patent . . . where 'the

second patent was part and parcel of the controversy surrounding the earlier patent.'" *Mann Design*

*Ltd. v. Bounce, Inc.*, 138 F. Supp. 2d 1174, 1178 (D. Minn. 2001) (quoting *Hooker Chems. &*

*Plastics Corp. v. Diamond Shamrock Corp.*, 87 F.R.D. 398, 403 (W.D.N.Y. 1980)).  Courts have

found that the patents are part and parcel of the same controversy when, for instance, they involve

"closely related questions and subject matter such that their core issues substantially overlap":

> While AmberWave argues that its infringement analysis will not overlap in
> presenting proof regarding the two patents and the infringing devices, only the
> narrowest and most artificial view of the issues could support that assertion. The
> more sensible view must acknowledge that, at a minimum, presentations on
> infringement for both the [previously pled and newly pled patents] will require a
> judge, on the summary judgment motions that are sure to be filed, and a jury, at any
> trial of the case, to become familiar with the same field of art, the same fundamental
> science and technology associated with methods of semiconductor fabrication, the
> same allegedly infringing devices, and, in any damages analysis, the same pricing,
> sales, and related market data.

*Intel Corp. v. Amberwave Sys. Corp.*, 233 F.R.D. 416, 418 (D. Del. 2005) (internal quotation marks

omitted); *see Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 990-91 (N.D. Cal. 2011)

14

(holding that new patents added to the amended complaint related back to the date of the original complaint because the new patents were similar to the old patents).

Here, the second amended complaint, which addresses the Ehret Patent, and the original complaint present closely related issues that are part and parcel of the same controversy. The question with respect to the patents in the original complaint and the Ehret Patent is whether the SignaLoc connector infringes these patents. The evidence as to whether PerfectVision's SignaLoc connector infringes the Ehret Patent will substantially overlap with the evidence as to whether the SignaLoc connector infringes PPC's other patents. The same technological knowledge will be required to decide whether the SignaLoc connector infringes any of these patents. PPC argues that the Ehret Patent is not related to the patents in PerfectVision's original complaint because the Ehret Patent is not a member of those patents' families and does not share a file history with those patents, but the fact remains that the evidence presented and the technological knowledge needed will be substantially similar in determining whether the SignaLoc connector infringes the Ehret Patent and whether it infringes the patents named in the original complaint. Moreover, the Ehret Patent is a continuity-connector patent, as the "field of technology" description in its patent application states, "The following relates to connectors used in coaxial cable communication applications, and more specifically to embodiments of a connector having a biasing member for maintaining continuity through a connector." Document #28-1 at 372. Similar language is used to describe each of the patent applications of the patents in the original complaint. *See* Document #1-2 at 59; Document #1-3 at 12; Document #1-4 at 11; Document #1-5 at 8; Document #1-6 at 15; Document #1-7 at 22. Also, the background information regarding continuity connectors in the Ehret Patent's application is substantially similar to the patents in the original complaint. Document #28-1 at 372; *see*

15

Document #1-2 at 59; Document #1-3 at 12; Document #1-4 at 11; Document #1-5 at 8; Document #1-6 at 15; Document #1-7 at 22.  Finally, as PerfectVision points out, the Ehret Patent and the patents in the original complaint have elements of a post with a flange at one end, a coupler with an internal lip, a connector body, and a fastener member, and all of these patents are supposed to improve electrical grounding reliability when the post is not in contact with the interface port. Document #32 at 21.  For these reasons, the Ehret Patent is part and parcel of the controversy regarding the patents in the original complaint, so the second amended complaint relates back to the filing of the original complaint.  PerfectVision's motion for leave to amend its complaint is granted.

**C.     Motion to Transfer**

PPC argues that even if this Court has subject matter jurisdiction over this action and even if this is the first-filed action with respect to the Ehret Patent, the Court should still transfer this action to the Northern District of New York.  Under 28 U.S.C. § 1404(a), "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  The Eighth Circuit has declined to identify an exhaustive list of specific factors to consider when determining whether to transfer an action under 28 U.S.C. § 1404(a).  *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010).  Plaintiffs should lose their forum choice "only if the balance of convenience strongly favors the defendant." *Ark. Right to Life State Political Action Cmte. v. Butler*, 972 F. Supp. 1187, 1193 (W.D. Ark. 1997). The party seeking the transfer therefore "typically bears the burden of proving that a transfer is warranted." *In re Apple, Inc.*, 602 F.3d at 913 (quoting *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997)).  The parties do not dispute that this action could have been brought in the Northern District of New York.

16

PPC has not met its burden to show that this Court should transfer this action to the Northern District of New York. As to the convenience of the parties, PerfectVision was founded in Arkansas, is based in Arkansas, and employs approximately 250 people in Arkansas, which gives it a strong connection to this district. PPC, which is based in New York, concedes that it cannot meet its burden to show that the Northern District of New York is a more convenient forum for the parties.

PPC contends, however, that the interests of justice so strongly favor the Northern District of New York that PPC can meet its burden by relying solely on this general category. Among the factors to consider in the "interests of justice" category are "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra Int'l, Inc.*, 119 F.3d at 696. PPC contends that judicial economy favors the Northern District of New York because PPC has filed a separate lawsuit in the Northern District of New York against another company, PCT International, Inc., for infringement of the Ehret Patent. *See* Document #30-14. PPC cites four district court cases to support its argument. In most of those cases, the courts explained that transfer was appropriate due to the probability that the cases would be consolidated with the other, related cases. *See Holley Performance Prods., Inc. v. Barry Grant, Inc.*, No. 04 C 5758, 2004 WL 3119017, at *7 (N.D. Ill. Dec. 20, 2004) ("It is both possible and in the interests of justice to consolidate this case with the parties' infringement case in the Northern District of Georgia."); *Black & Decker Corp. v. Amirra, Inc.*, 909 F. Supp. 633, 639-41 (W.D. Ark. 1995) (explaining that the judge in the related action already was familiar with the technology at issue and that the decision to transfer was based not only on the pendency of related litigation but also on "the location of the defendants and the

absence of the presence of *any party* in Arkansas"); *Fairfax Dental (Ir.) Ltd. v. S.J. Filhol Ltd.*, 645

F. Supp. 89, 92 & n.2 (E.D.N.Y. 1986) (explaining that a court should consider the likelihood that

consolidation with the related case will occur, although no requirement exists that the Court be

certain of consolidation before transferring the case). *But see Avante Int'l Tech., Inc. v. Hart

Intercivic, Inc.*, Civil Nos. 08-636-GPM, 07-169-GPM, 2009 WL 2448519, at *5 (S.D. Ill. July 22,

2009) (stating that transfer can be appropriate even when consolidation is not feasible).

Here, by contrast, even if this action is transferred, it is unlikely that this action will be

consolidated with the action between PPC and PCT International.  The Leahy-Smith America

Invents Act, which was enacted in 2011, limited the ability to join patent-infringement actions:

> **(a) Joinder of accused infringers**.--With respect to any civil action arising under
> any Act of Congress relating to patents, other than an action or trial in which an act
> of infringement under section 271(e)(2) has been pled, parties that are accused
> infringers may be joined in one action as defendants or counterclaim defendants, or
> have their actions consolidated for trial, only if–
>
>> **(1)** any right to relief is asserted against the parties jointly, severally,
>> or in the alternative with respect to or arising out of the same
>> transaction, occurrence, or series of transactions or occurrences
>> relating to the making, using, importing into the United States,
>> offering for sale, or selling of the same accused product or process;
>> and
>>
>> **(2)** questions of fact common to all defendants or counterclaim
>> defendants will arise in the action.
>
> **(b) Allegations insufficient for joinder**.--For purposes of this subsection, accused
> infringers may not be joined in one action as defendants or counterclaim defendants,
> or have their actions consolidated for trial, based solely on allegations that they each
> have infringed the patent or patents in suit.

35 U.S.C.A. § 299.  Because the action in the Northern District of New York between PPC and PCT

International addresses a different product from PerfectVision's SignaLoc connector, PerfectVision

would have to waive the joinder limitations set forth in the Leahy-Smith America Invents Act to

18

consolidate the actions, *see* 35 U.S.C.A. § 299(c), and no evidence suggests that PerfectVision would

do that.  Moreover, the action between PPC and PCT International was filed on February 5, 2013,

months after PerfectVision filed the instant action.  The interests of justice are not furthered by

allowing the later-to-file plaintiff (that is also the defendant in this action) to choose its forum.

PPC responds that it is actually the "true plaintiff" in this action, since PerfectVision's

amended complaint has not yet been filed.  This argument was addressed above and rejected.  PPC

also contends that it is the true plaintiff because it is seeking damages against PerfectVision in the

action in the Northern District of New York, while PerfectVision is seeking a declaratory judgment

in this action.  The "general rule," however, is that a court should "favor[] the forum of the first-filed

action, whether or not it is a declaratory action."  *Genetech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931,

937 (Fed. Cir. 1993), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277, 115

S. Ct. 2137, 132 L. Ed. 2d 214 (1995).  Consequently, the fact that PPC is suing PerfectVision for

damages in a later-filed suit in the Northern District of New York is not by itself sufficient to warrant

transfer.

PPC also argues that the relative congestion of the calendars of the Northern District of New

York and of this Court favor transferring the action to the Northern District of New York.  To

support its argument, PPC cites to a report that shows that on September 30, 2011, the Eastern

District of Arkansas had 8,984 cases pending (5,412 of which had been pending for three years or

more) while the Northern District of New York had 2,386 cases pending (171 of which had been

pending for three years or more).  Document #30-15.  These numbers are skewed by the fact that

another judge of this Court, the Honorable Billy Roy Wilson, was (and is) presiding over the

multidistrict litigation of *In Re Prempro Products Liability Litigation*, MDL No. 4:03CV1507-

19

WRW.  When the cases from that MDL are removed from the count, there were 1,506 civil cases

pending in this district on September 30, 2011.[3]  Disregarding the cases assigned to Judge Wilson,

on September 30, 2011, this district had fifteen civil cases that were three years old or older.[4]  The

median time to disposition at trial was 35.6 months in the Northern District of New York and

22.3 months in the Eastern District of Arkansas.  *See* Administrative Office of the United States

Courts, *2011 Annual Report of the Director: Judicial Business of the United States Courts* (2012).[5]

Because PPC cannot demonstrate that this Court is more congested than the Northern District of

New York, this point does not further PPC's argument that this action should be transferred.

In a different respect, the interests of justice do not favor transferring this action.  PPC

attempted to divest this Court of jurisdiction by covenanting not to sue PerfectVision.  Although PPC

did not covenant not to sue specifically for infringement of the Ehret Patent, PPC represented to this

Court that it would not sue PerfectVision for patent infringement of the SignaLoc connector.  *See*

Document #23 at 6.  Then, on the day the Ehret Patent issued, PPC filed suit against PerfectVision

for patent infringement in the Northern District of New York.  These actions constitute another factor

that makes the Court, in the interests of justice, less inclined to transfer this action.  Therefore,

because PPC has failed to demonstrate that the balance of convenience or the interests of justice

favor transferring this action, this action will not be transferred.

---

[3] The Court can take judicial notice of its own records.  *Lockett v. United States*, 333 Fed. App'x 143 (8th Cir. 2009).  A report maintained by the Clerk of Court is appended to this opinion, and it reflects the state of this Court's docket for civil cases on September 30, 2011.

[4] The report of cases pending more than three years on September 30, 2011, is available at http://uscourts.gov/statistics/CivilJusticeReformActReport.aspx.

[5] http://www.uscourts.gov/uscourts/statistics/judicialbusiness/2011/judicialbusiness2011.pdf.

**D.      Motion to Enjoin**

PerfectVision has moved the Court to enjoin PPC from proceeding with its action against PerfectVision in the Northern District of New York. PerfectVision argues that since this action was the first-filed action, and since the balance of convenience and the interests of justice do not warrant transfer of this action, the generally accepted rule would be to enjoin the action in the Northern District of New York. *See, e.g.*, *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005); *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1004-05 (8th Cir. 1993); *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 332 (S.D.N.Y. 1998) ("When two actions involving the same parties and embracing the same issues are brought in different federal district courts, the court in the first-filed action has the power to enjoin the parties from proceeding in the second action, and indeed, should do so absent a showing of special circumstances that would give priority to the second action."); *Cosden Oil & Chem. Co. v. Foster Grant Co.*, 432 F. Supp. 956, 960 (D. Del. 1977).

Whether to enjoin the parties from proceeding in another court is a matter of exercising sound discretion. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990); *Bell v. Sellevold*, 713 F.2d 1396, 1404 (8th Cir. 1983). "Such discretion should be rarely exercised due to philosophical concerns regarding one court's control over another . . . ." *Arr-Maz Prods., L.P. v. Shilling Const. Co.*, No. 12-CV-0319-CVE-FHM, 2012 WL 5251191, at *9 (N.D. Okla. Oct. 24, 2012) (internal quotation marks omitted); *see Emerson Elec. Mfg. Co. v. Emerson Radio & Phonograph Corp.*, 141 F. Supp. 645, 647 (D.N.J. 1956) (cautioning that courts should use restraint when deciding whether to stop parties from litigating in other federal courts).

Generally, an injunction will not issue when there is an adequate remedy at law. *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1005 (8th Cir. 2004). Remedies are available to PerfectVision in the Northern District of New York, and that court can decide how to proceed with that action in light of this opinion. In fact, PerfectVision has filed a motion to dismiss, transfer, or stay in that action. *PPC Broadband, Inc. v. PerfectVision Mfg., Inc.*, No. 5:13-CV-0134 (Document #8); *see Arr-Maz Prods., L.P.*, 2012 WL 5251191, at *9 ("[A] review of the docket sheet in the Kansas case shows that Arr-Maz has filed a motion to dismiss, transfer, or stay the Kansas, case, and the presiding judge in the Kansas case should be permitted to consider the appropriate course of action in that case."). PerfectVision never argues that it will suffer irreparable harm if this Court does not enjoin that action.

Morever, the action in the Northern District of New York presents issues beyond those presented in this action. In addition to the patent-infringement claim, that action presents claims for negligent misrepresentation, unfair competition, and deceptive trade practices. Enjoining a later-filed action in another district from proceeding requires the same parties and the same or similar issues. *Sanofi-Aventis Deutschland GmbH v. Genetech, Inc.*, – F.3d –, No. 2012-1454, 2013 WL 1921073, at *3 (Fed. Cir. May 10, 2013). "The issues need not be identical; it is enough that they are functionally the same such that the result in one action is dispositive of the other. If they are not identical or functionally the same, no injunction will lie." *Id.* at *4. While the declaratory judgment claims in this action and the claim in the action in the Northern District of New York regarding the Ehret Patent involve the same issue and the same parties, the other claims in the Northern District of New York – for negligent misrepresentation, unfair competition, and deceptive trade practices – do not necessarily involve the same issue, as those claims pertain to the parties' more general

22

relationships and dealings with one another (albeit in regards to PerfectVision's development of the SignaLoc connector), not to whether a specific product infringes one or more patents. *See* Document #30-13. The presence of claims in that action that arguably would not be affected by adjudication of the claims in this action further indicates that this Court should not enjoin the parties from proceeding with the other action.

**E.   Costs and Attorneys' Fees**

PPC argues that the Court should award costs and attorneys' fees to PPC because PerfectVision's behavior was unreasonable in not dismissing the action after PPC covenanted not to sue PerfectVision. Since PPC's covenant not to sue did not divest this Court of jurisdiction, PerfectVision acted reasonably, and PPC's argument that it should be awarded costs and attorneys' fees fails.

## CONCLUSION

PPC's motion to dismiss for lack of subject matter jurisdiction is denied. Document #13. PPC's motion to transfer the action to the Northern District of New York is denied. Document #29. PerfectVision's second motion for leave to amend its complaint is granted. Document #28. PerfectVision's first motion for leave to amend its complaint is denied as moot. Document #20. The filing of the amended complaint relates back to the filing of the original complaint. PerfectVision's motion to enjoin PPC from proceeding with its action against PerfectVision in the Northern District of New York is denied. Document #31.

IT IS SO ORDERED this _____ day of June, 2013.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

23

# APPENDIX

## CIVIL CASES PENDING STATISTICS
As of: 9/30/2011

| Judge | Civil Pending No MDL | Civil Pending with MDL | SocSec Pending | All Prisoner Pending | 1983 Pending Only | Habeas Corpus Pending | Other Prisoner Pending |
|---|---|---|---|---|---|---|---|
| Joseph F. Bataillon | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Beth Deere | 56 | 56 | 42 | 13 | 8 | 5 | 0 |
| James E. Gritzner | 32 | 32 | 0 | 0 | 0 | 0 | 0 |
| Jimm Larry Hendren | 1 | 1 | 0 | 1 | 0 | 0 | 1 |
| J. Leon Holmes | 203 | 203 | 23 | 71 | 40 | 20 | 11 |
| Jerome T. Kearney | 54 | 54 | 41 | 12 | 11 | 1 | 0 |
| Richard G. Kopf | 1 | 1 | 0 | 1 | 0 | 0 | 1 |
| D. P. Marshall Jr. | 240 | 240 | 19 | 76 | 54 | 15 | 7 |
| Brian S. Miller | 247 | 247 | 21 | 84 | 57 | 18 | 9 |
| James M. Moody | 206 | 206 | 17 | 86 | 50 | 25 | 11 |
| J. Thomas Ray | 52 | 52 | 46 | 6 | 4 | 2 | 0 |
| Joe J. Volpe | 55 | 55 | 45 | 10 | 7 | 3 | 0 |
| Dean Whipple | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Billy Roy Wilson | 83 | 7557 | 10 | 18 | 10 | 2 | 6 |
| Susan Webber Wright | 234 | 234 | 25 | 79 | 43 | 28 | 8 |
| H. David Young | 40 | 40 | 29 | 10 | 10 | 0 | 0 |
| Total | 1506 | 8980 | 318 | 467 | 294 | 119 | 54 |